OPINION
{¶ 1} Defendant-appellant, Christopher A. Allen, was indicted on one count of arson, a violation of R.C. 2909.03, and three counts of intimidation of a crime victim or witness, in violation of R.C. 2921.04. After a jury trial, appellant was convicted of Count 4, intimidation of a crime victim or witness. Appellant was sentenced to five years of imprisonment. Appellant filed a notice of appeal, raising the following assignments of error: *Page 2 
 Assignment of Error One
 PREJUDICIAL ERROR OCCURS WHEN A JUROR WHO SLEEPS THROUGHOUT THE TRIAL IS NOT DISMISSED, CONTRA THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
 Assignment of Error Two
 a) THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE CONVICTION.
 b) THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error Three
 PREJUDICIAL ERROR OCCURS WHEN THE JURY'S VERDICT IS BASED ON A VARIANCE FROM THE INDICTMENT CONTRA THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
 Assignment of Error Four
 INEFFECTIVE ASSISTANCE OF COUNSEL OCCURS WHEN THE DEFENSE INTRODUCES TESTIMONY WHICH RESULTS IN A VARIANCE FROM THE INDICTMENT CONTRA THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
 {¶ 2} The charges in this case arise from events occurring on September 5, 2005. The Columbus Fire Department responded to a car on fire at 1544 Genessee Avenue, belonging to Cherry Sydnor. The Fire Investigation Unit determined that it was a set fire started by an ignitable liquid and towel. (Tr. at 47.) Ms. Sydnor testified that she had known appellant since approximately 1997. In May 2005, a civil protection order was rendered against appellant. On September 5, 2005, Ms. Sydnor was awakened by the fire trucks and her car was on fire and destroyed. After the fire, she and her boyfriend were walking to the store and saw appellant drive by them. When *Page 3 
they arrived home, she saw appellant driving on her street and she called the police. The police arrived and went after appellant. They returned with appellant in the cruiser. Appellant began yelling at Ms. Sydnor, her boyfriend, and their neighbor.
 {¶ 3} Finding the second assignment of error dispositive in this case, we shall address it first. By the second assignment of error, appellant contends that the evidence is insufficient to support the conviction and the verdict is against the manifest weight of the evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 4} In this case, appellant was convicted of Count 4 of the indictment, intimidation of a crime victim or witness, Ms. Sydnor, a violation of R.C. 2921.04, which provides, as follows:
 (B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.
 {¶ 5} Ms. Sydnor testified, as follows:
 Q What did he say to you?
 A Threatened me, threatened my life, I heard him say something about my neighbor burning her house down. *Page 4 
 Q What'd he say to you, do you recall exactly?
 A Not exactly, because I was really kind of toning him out. I remember him calling my name, my full name. I was just really trying to block him out at this point. But I remember threats. I remember him threatening my boyfriend saying that "I know where your mom lives at, too." He also told me that, "I'll be out," you know, "I'll get right back out I'm going to come back over here." And that was enough for me.
 Q Do you believe that those threats are real?
 A Yeah.
 Q You've known Mr. Allen for a long time, roughly 12 years, I'm guessing?
 A I imagine, probably back in `97 or'98.
 Q And you've had some experience with him in the past enough to feel threatened to file this protection order?
 A Yes.
 Q And were you in fear that he might carry out the threats he was making?
 A Yes.
 Q Did that make you — did that worry you in any way about testifying today?
 A Not — not really.
 Q Okay. Did they intimidate you, these threats at all?
 A For sometime they did. But I know that I'm not going to be here for too long to even worry about him.
 Q All right. You moved within two weeks?
 A Uh-huh. *Page 5 
 Q How did it affect you? How did these threats and this incident affect you?
 A It bothered me. I just — after being in one home and having all my windows broken out, I lost a lot of sleep; I never slept. I mean, it was just crazy. Just every time you lay down, you hear something crashing and breaking your windows out. Or you wake up in the morning all your tires are slashed, or your back window was constantly knocked out. I'm constantly, you know, losing time off of work.
 Q You broke your lease, did you not?
 A The second home on Genessee Avenue, yes, I broke my lease.
 Q Did that cost you any financial loss?
 A Yes.
 Q Did you feel that Mr. Allen's comments were [a] personal threat to you?
 A Most definitely.
 Q Are you still in fear of Mr. Allen?
 A As long as I don't have to see him, I'm not in fear. But as long as I know that I will see him, yes, I will be in fear. But like I said, I'm not planning on being here too much longer.
 * * *
 Q Does your testimony today put you in jeopardy of future harm?
 A It possibly could. But right at this point[.]
(Tr. at 147-150.)
 {¶ 6} This case is very similar to State v. Jackson, Franklin App. No. 02AP-867, 2003-Ohio-6183. In Jackson, this court found insufficient evidence supported the defendant's conviction for intimidation of a witness. This court found that the state failed *Page 6 
to prove that the defendant's threats were made to influence or intimidate the witness in the discharge of her duties as a witness or in the filing of criminal charges.
 {¶ 7} While viewing the evidence in a light most favorable to the prosecution, we find no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. While it is clear that appellant made such threats to intimidate these people, including Ms. Sydnor, there is no evidence that appellant made these threats in an effort to discourage Ms. Sydnor from testifying at a later criminal proceeding. The threats to Ms. Sydnor had been ongoing. She testified that, due to the constant harassment, she had been forced to seek a protection order. To prove intimidation of a crime victim or witness the purpose behind the threat must be to discourage the witness from being involved in criminal proceedings against the accused. SeeState v. Brown, Montgomery App. No. 19113, 2002-Ohio-6370. There must be a nexus between appellant's threats and his desire to intimidate or harass Ms. Sydnor so that she would not cooperate with the prosecution in future criminal proceedings against him. See Jackson, supra. Here there is no showing of such required nexus. Rather, when asked if the threats worried her "in any way" about testifying in this case, she replied "[n]ot — not really." (Tr. at 148.) Appellant's second assignment of error regarding sufficiency of the evidence is well-taken, which renders it moot regarding manifest weight of the evidence.
 {¶ 8} Due to our disposition of the second assignment of error, appellant's other assignments of error are rendered moot. For the foregoing reasons, appellant's first, third, and fourth assignments of error and the second part of the second assignment of error are moot and the second assignment of error is sustained regarding the *Page 7 
sufficiency of the evidence, and the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
BROWN, J., concurs. SADLER, P.J., dissents.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.